CANDI CAKE,

    *Plaintiff,*

V.                                          **NO. 3:16-CV-102-J-32PDB**

CASUAL CONCEPTS, INC.,
RONALD LEGRAND, & JOHN LONG,

    *Defendants.*

---

# Report & Recommendation

This case involves alleged failures to pay wages and retaliation for complaining about the failures. Because of unusual discovery happenings, the Court entered this order:

> Upon review, the remaining deadlines and settings in the Case Management and Scheduling Order (Doc. 18) are **VACATED**. Defendants' Motion to Dismiss (Doc. 22) is referred to the assigned United States Magistrate Judge for a Report and Recommendation. As part of her consideration, the Magistrate Judge shall assess the additional issues related to discovery, sanctions, and overall case status to determine how the Court should proceed.

Doc. 30 (emphasis in original). This report and recommendation addresses the motion to dismiss, Doc. 22, the additional issues, and the case status.

## I.    Background

The plaintiff, Candi Cake, used to work for the defendant, Casual Concepts, Inc., doing business as Iggy's Seafood Shack. Doc. 8 at 1, 2. The other defendants, Ronald LeGrand and John Long, allegedly own and manage the company. Doc. 9

¶¶ 18, 27.[1] Cake is represented by counsel in New York City, and the defendants are represented by counsel in Jacksonville. All of the lawyers are members in good standing of the Middle District of Florida Bar and The Florida Bar.

The case began February 1, 2016, with the filing of the complaint. Doc. 1. Cake alleges the defendants failed to pay overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and regular wages, in violation of the Florida Minimum Wage Act, Fla. Stat. § 448.110, and the FLSA. Doc. 1.

The Court entered its standard track notice and scheduling order for FLSA cases, directing Cake to serve and file answers to court interrogatories, the defendants to serve and file a summary of hours Cake worked during "each relevant work week," and the parties to meet and confer in person in a good faith effort to settle. Doc. 4.

The defendants filed an answer and affirmative defenses, Doc. 5, and an amended answer and affirmative defenses. Doc. 7.

Cake filed answers to the court interrogatories, alleging the following facts. Doc. 8. She worked at Iggy's Seafood Shack from September 17 to December 18, 2015. Doc. 8 at 1–2. LeGrand and Long were her immediate supervisors. Doc. 8 at 1. She had a regular schedule but worked additional hours depending on "how busy the restaurant was and of course how late patrons stayed." Doc. 8 at 1. She was "called an Associate Supervisor or Associate Manager" or "whatever they wanted as the business is not a large formal franchise where official job titles are certain." Doc. 8 at 2. Most of the time, she was "on the floor." Doc. 8 at 2. She described her duties:

> My duties were covering the different various tipped and hourly paid positions around the restaurant and performing their duties as we [were] understaffed. So I would go from position to position whether

---

[1]Another defendant, Global Publishing, Inc., was dropped from the case early on. *See* Doc. 6 (motion to dismiss by Global); Doc. 9 (amended complaint omitting Global).

> hosting duties, bringing food out to tables, preparing guests['] drink[s], kitchen prep work, such as making salads or getting the ingredients ready, custodial duties, including washing floors and cleaning the walk[-]in freezer, organizing, clerical and secretarial type work, stocking food that was delivered, wrapping up silverware, and washing dishes.

Doc. 8 at 2. She understood that her regular wage was $20 an hour. Doc. 8 at 2. She averaged 15 overtime hours a week, totaling 120 overtime hours during her tenure, excluding the partial weeks she worked during her first and last weeks. Doc. 8 at 2. She was paid $20 an hour for all but 8 regular hours worked (for which she was not paid) and nothing for the 120 overtime hours worked. Doc. 8 at 3. She first complained about the alleged violations in November 2015. Doc. 8 at 3. Most complaints were oral, but she is searching for related emails. Doc. 8 at 3. She described the alleged reaction to her complaints:

> I was told that "overtime" is "non existent [sic]" and if an employee went over 40 hours in a week, that their hours were and would often be cut and changed in the company systems they used for payroll and timekeeping. (They used systems in conjunction with Ron Legrand's other companies to alter pay records and underpay all employees, including myself).
>
> I was new at the company, I needed the work, and certainly did not want to loose [sic] my job, so trying not to make too many waves, I decided to bring it up again and try to get them to change this practice. It was not fair, I was being a victim of this unlawful wage cutting practice just as many other hard working people [were]. So I raised the issue again, a few weeks later, and again after that. As time passed I continued to raise the issue, ultimately letting them know that if they did [not] fix the issue and start paying people the right way, including myself, that I would have to take legal action. Thus, it became clear to Ron and John, that I was not going to drop it, they assured [me] it would be addressed, but I now realize they just told me that to b[u]y some time, and the[y] fired me not long after, because nothing (but firing me) was done, I never received any overtime pay, and to the best of my knowledge the practice of cutting hours of employees continues today, further confirming my belief that I was fired for raising issue with the pay practice.

Doc. 8 at 4. She kept no journal of hours but has corroborating emails and reports. Doc. 8 at 4.

3

Cake claims $4200 in overtime wages, $4200 in liquidated damages for unpaid overtime wages, $160 in unpaid regular wages (including $58 in minimum wages), $58 in liquidated damages for unpaid minimum wages, attorney's fees, costs, and damages for alleged retaliation. Doc. 8 at 3.

Cake then filed an amended complaint adding a retaliation claim under the FLSA, Doc. 9, and the defendants filed an answer and affirmative defenses, Doc. 12, to that pleading.

The defendants filed a verified statement that Cake had been a salaried employee who had received $20 an hour, $9392.86 in gross pay, and $7918.24 in net pay. Doc. 13, Doc. 14.

A month later, the parties filed status reports notifying the Court they had failed to settle, Docs. 15, 16, and a case management report, Doc. 17, prompting the Court to enter a case management and scheduling order, Doc. 18. The order, entered on July 19, 2016, directed Cake to immediately file a certificate of interested persons and corporate disclosure statement (she has not filed one yet), referred the case to mediation with Gregg Wirtz as the mediator, and established event dates in 2017, including a February 15 discovery deadline, February 28 mediation deadline, March 15 dispositive-motion deadline, and an August trial. Doc. 18 at 1–2.

At that point, the case was on track.

Then the following events occurred. Cake's counsel raises arguments concerning defense counsel's failure to provide deposition dates (events regarding that matter are in white), and their failure to provide mediation dates (events regarding that matter are in light gray). Defense counsel raise arguments concerning the failure of Cake's counsel to respond to interrogatories and requests for production and failure to respond the Court's order compelling responses (events regarding that matter are in dark gray), and setting depositions of LeGrand and Long with insufficient notice (events regarding that issue are in white).

| Date | Event | Doc. |
|------|-------|------|
| 08/26/16 | The defendants serve interrogatories and requests for production. | 20 at 1–2 |
| 09/12/16 | Cake's counsel emails defense counsel; he requests dates for depositions of LeGrand and Long and proposes September 20 to 23, 27, and 28. | 32-1 at 1 |
| 09/17/16 | Defense counsel emails Cake's counsel; he responds LeGrand is unavailable on those dates but is available on October 3 and November 1, 7, and 14, and Long is reviewing his availability. | 32-1 at 2 |
| **09/29/16** | **Due date for Cake's responses to the interrogatories and requests for production** | **20 at 2** |
| 09/29/16 | Defense counsel emails Cake's counsel; he writes LeGrand is no longer available on October 3 and requests more dates. | 32-1 at 3 |
| 10/16/16 | Cake's counsel emails defense counsel; he responds he plans to depose Long on October 28 at 1:00 p.m. if that works. | 32-1 at 4 |
| 10/17/16 | Defense counsel emails Cake's counsel; he replies defense counsel will be out of town for a trial on October 28 but will check LeGrand's and Long's availability and get back to him. | 32-1 at 5 |
| | Defense counsel emails Cake's counsel; he asks for the status of Cake's overdue responses to the interrogatories and requests for production. | 32-1 at 5 |
| 10/18/16 | Defense counsel asks Cake's counsel for the status of Cake's overdue responses to the interrogatories and requests for production. Cake's counsel responds he provided them but will provide them again. (Although unclear, these statements from the defendants' motion could refer to the October 17 email described immediately above). | 20 at 2 |
| 10/20/16 | The assistant for Cake's counsel emails the assistant for defense counsel; she proposes November 23, 29, or 30 or December 1 or 2 for Long's and LeGrand's depositions. | 32-1 at 6 |

| | | |
|---|---|---|
| | Defense counsel emails the assistant for Cake's counsel; he responds he must determine LeGrand's and Long's availability and will let her "know as soon as we hear back from them." | 32-1 at 7 |
| 11/17/16 | Defense counsel asks Cake's counsel for the status of Cake's overdue responses to the interrogatories and requests for production. Cake's counsel responds he will serve them as soon as possible. | 20 at 2 |
| 12/06/16 | Defense counsel informs Cake's counsel the defendants intend to file a motion to compel Cake to respond to the interrogatories and requests for production. | 20 at 6–7 |
| 12/07/16 | The defendants file the motion to compel Cake to respond to the interrogatories and requests for production and request expenses in bringing the motion to compel. | 20 |
| 01/09/17 | The Court grants the motion to compel. The Court observes Cake filed no response and directs Cake, by February 3, to respond to the interrogatories and requests for production in full and without objection and either show cause why she or her counsel should not be required to pay expenses or inform the Court the parties have resolved the matter of expenses. | 21 |
| **02/03/17 (Friday)** | **Deadline for Cake to respond to the interrogatories and requests for production and either show cause why she or her counsel should not be required to pay expenses or inform the Court the parties have resolved the matter of expenses** | 21 |
| 02/06/17 (Monday) | The defendants file the motion to dismiss the amended complaint for failure to prosecute and failure to comply with the Court's order and request expenses in bringing the motion to dismiss. | 22 |
| 02/08/17 | The Court (the Honorable Timothy J. Corrigan) enters an order. The Court directs Cake to respond to the motion to dismiss by February 28 or the Court will rule on it assuming it is unopposed. The Court observes it intends to grant the request for expenses in bringing the motion to compel and directs the defendants to file documentation of those expenses by February 28. | 23 |

| 02/10/17 (Friday) | At 5:25 p.m., Cake's counsel emails defense counsel; he attaches notices scheduling depositions of LeGrand and Long for February 15. | 24 at 3 24-1 |
|---|---|---|
| | At 5:30 p.m., defense counsel emails Cake's counsel; he responds scheduling depositions on short notice is improper, LeGrand and Long are unavailable, and he will file a motion for a protective order if Cake's counsel does not cancel the notices by February 13 at noon. | 24 at 4 24-2 at 2 |
| | At 5:30 p.m., defense counsel receives an automatic email response stating, "Thank you for your email, but I am afraid I am out of the office at the moment without access to the internet. I will return your email just as soon as I can. Thank you." | 24 at 4 24-2 at 4 |
| 02/13/17 (Monday) | At 4:32 p.m., the defendants file a motion for a protective order. They ask the Court to quash the notices of depositions and for expenses in bringing the motion for a protective order. | 24 |
| 02/14/17 | The Court grants the motion for a protective order and directs Cake, by February 28, to show cause why she or her counsel should not be required to pay expenses in bringing the motion for a protective order. | 25 |
| **02/15/17** | **Discovery deadline** | 18 |
| 02/28/17 | Cake's counsel files a notice of serving responses to the interrogatories and requests for production. | 27 |
| | Cake's counsel files an "omnibus response." He explains his failure to timely respond to the interrogatories and requests for production were due to health issues and contends sanctions are unwarranted because of the health issues and because defense counsel failed to adequately confer before filing the motion to compel and motion to dismiss, produced no documents in response to Cake's discovery requests, and failed to provide deposition dates despite emails requesting them. He attaches a letter from a nurse practitioner concerning his health issues. She states she is his primary care provider and he has been her patient since 2015. She explains:<br><br>For the last few months, including on February 3, 2017, he has experienced a series of | 28 at 1–3 & n.4 28-1 |

| | | |
|---|---|---|
| | migraines and various sleep related issues. The onset, intensity, and duration of these headaches have unfortunately increased. He has also been diagnosed with a circadian rhythm sleep disorder. Due to this disorder, the migraines, and other related conditions, it was impossible for him to work or meet any deadlines on February 3, 2017. I have made a recent medication change to treat these and other related conditions, and I remain hopeful this change will have a lasting positive affect [sic] and will permit him to resume his normal work and life schedule. | |
| | Defense counsel files affidavits supporting the request for expenses in bringing the motion to compel. The affidavits show counsel billed $847.80 for work to prepare the motion, comprised of 0.6 hours of work by Richard Margulies, Esquire, at $378 an hour and 3 hours of work by Sean Walsh, Esquire, at $207 an hour. Margulies states he is a principal in the Jacksonville office of Jackson Lewis, P.C.; has been a member of the Florida Bar since 1986; is admitted to practice before the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Northern, Middle, and Southern Districts of Florida; and is AV-rated by Martindale-Hubbell. Walsh states he is an associate in the Jacksonville office of Jackson Lewis; has been a member of the Florida bar since 2014; and is admitted to practice before the Eleventh Circuit Court of Appeals and the Northern, Middle, and Southern Districts of Florida. | 26<br>26-1<br>26-2<br>26-3 |
| | **Mediation Deadline** | 18 |
| 03/01/17 | Without leave and without conferring with Cake's counsel out of concern the Court would act on information from Cake's counsel alone, defense counsel files a reply to the omnibus response. He asserts the response is a sham and attaches documents from six cases in which Cake's counsel participated from August 26, 2016, to February 28, 2017.<br><br>In the first, Cake's counsel appears to have filed a complaint on August 31, 2016, a certificate of interested persons and corporate disclosure statement on November 28, 2016, and a response to an order directing the parties | 29 |

| | | |
|---|---|---|
| | to file a proposed order scheduling mediation on January 19, 2017. | |
| | In the second, Cake's counsel and co-counsel appear to have filed a reply brief on October 25, 2016. | |
| | In the third, Cake's counsel appears to have filed a complaint on November 26, 2016, and his office sent a notice and waiver of service forms on December 1, 2016, retained a process server on January 19, 2017, and retained another process server on February 11, 2017. | |
| | In the fourth, Cake's counsel appears to have filed a complaint and amended complaint on November 30, 2016, and asked a clerk to issue a summons on January 24, 2017. | |
| | In the fifth, Cake's counsel appears to have filed a complaint on January 14, 2017. | |
| | In the sixth, Cake's counsel appears to have participated in his own divorce proceedings, including by filing a response to a motion to vacate an order on September 28, 2016, and a motion for a protective order on November 2, 2016. | |
| 03/07/17 | The assistant for Cake's counsel emails defense counsel. She writes she wants to schedule mediation with Wirtz, explains Wirtz is available March 20, 22, 23, and 30, and April 3, 5, 6, 13, 17, and 26, and asks if defense counsel will "kindly confirm which dates work best for you and your clients." | 32-1 at 8 |
| 03/13/17 | The assistant for Cake's counsel forwards the email to defense counsel's assistant; she asks, "Do you have any updates on the dates [provided]?" | 32-1 at 9 |
| 03/15/17 | Cake's counsel emails defense counsel. He writes, "I understand you did not want to mediate earlier, but now that you have Plaintiff's discovery and documents I see no reason why we don't make every good faith effort to resolve this case via mediation. Said differently, I believe we should mediate with Gregg Wirtz, and I believe we should do so as soon as possible." He explains Wirtz is available the morning of March 17 and any time on March 20 or 21 and asks if any of those times and dates work. | 32-1 at 10 |
| 03/16/17 | Defense counsel emails Cake's counsel; he responds, "We unavailable [sic] over the next three weeks due to prior scheduled conflicts and travel. Thanks[.]" | 32-1 at 11 |

| | | |
|---|---|---|
| 04/05/17 | The assistant for Cake's counsel emails defense counsel; she writes Wirtz is available on April 13, 17, 18, 26, and 28, and May 1, 2, and 3, and asks if any of those dates work. | 32-1 at 12 |
| 04/13/17 | The assistant for Cake's counsel emails defense counsel; she asks them to "kindly respond as to what date works best." | 32-1 at 13 |
| | Defense counsel emails the assistant for Cake's counsel; he responds, "None of those dates work for us. Thanks[.]" | 32-1 at 14 |
| | The assistant for Cake's counsel emails defense counsel; she replies, "If that[']s the case, do you know which dates do work? We are more than happy to work around your schedule." | 32-1 at 15 |
| 05/11/17 | Cake's counsel emails defense counsel; he explains Cake asked him to file a motion to enforce the Court's order to attend mediation, requests the defendants' position, and asks to discuss any objection to mediation or, if no objection, for dates. | 32-1 at 16 |
| | Defense counsel emails Cake's counsel; he agrees to "work on dates," states he will obtain the clients' availability, and asks Cake's counsel for proposed dates. | 32-1 at 17 |
| | Cake's counsel emails defense counsel; he responds, "Great. Thank you Sean. As for dates I had in mind, right now, May 24, 2017 and June 7, 2017. I can hold these dates if your calendar is clear and you need to check with your clients. –Thanks." | 32-1 at 18 |
| | Defense counsel emails Cake's counsel; he responds he will share the dates with the defendants and confirm everyone's availability. | 32-1 at 19 |
| | Cake's counsel emails defense counsel; he confirms the plan. | 32-1 at 20 |
| 05/15/17 | Defense counsel emails Cake's counsel; he writes, "Our office has hearings scheduled for the 24th of this month and June 7, 2017. Can you please provide us with other dates in June and July? Thanks[.]" | 32-1 at 21 |

| | | |
|---|---|---|
| **06/06/17** | **The Court enters the order vacating the remaining deadlines and settings in the case management and scheduling order and referring the motion to dismiss and other matters for a report and recommendation.** | **30** |
| 06/15/17 | The assistant for Cake's counsel emails defense counsel; she provides Wirtz's availability for 8 days in June and 17 days in July and asks which dates work best. | 32-1 at 22 |
| | Defense counsel emails the assistant for Cake's counsel; he responds that in light of the termination of the remaining deadlines in the case management and scheduling order, the defendants intend to await a report and recommendation before proceeding to mediation. | 32-1 at 23 |

To prepare this report and recommendation, I conducted a hearing on July 7. Doc. 31. A court reporter is preparing a transcript. Less than an hour before the hearing started, Cake's counsel filed the emails regarding his and his assistant's failed efforts to schedule LeGrand's and Long's depositions and the mediation. Doc. 32.

Cake's counsel did not dispute what had occurred but contended both sides had not complied with obligations. He contended while Cake eventually had provided responses to the interrogatories and requests for production, the defendants have provided no discovery to date. Defense counsel contended Cake's counsel was wrong and the defendants have responded to all discovery requests.

Cake's counsel stated he had not acted purposefully and had not viewed as merely aspirational the deadlines or the Court's order directing him to respond to the interrogatories and requests for production. He explained he had been embarrassed about having significant health issues (a first for him) and had worried that publicizing them would allow others to take advantage of him. He stated he had asked his medical provider to omit from her letter to the Court details of more embarrassing health issues. He stated his health has continued to improve and would not be an

issue going forward. He added he and defense counsel generally have a good working relationship.

Defense counsel offered a two-page declaration in another case—*Tulloch v. District Board of Trustees of Miami Dade College*, No. 1:16-cv-24919 (S.D. Fla.)—in which Cake's counsel describes efforts to serve a defendant from December 2016 through February 2017. Defense counsel contended the ability of Cake's counsel to act in that and the other cases provided contradicts the claim by Cake's counsel that he had disabling health issues.

Cake's counsel explained he could participate in the other cases but not respond to the interrogatories and requests for production in this case because his health issues were intermittent, his participation in the other cases had been insignificant (taking only a few hours each), his assistant had handled some of the matters in the other cases but could not have handled the responses in this case, and preparing the responses in this case had been his most burdensome obligation. He agreed moving for an extension of time would have been preferable but explained he had not readily come to terms with his inability to keep up.

Cake's counsel contended requiring him to pay expenses for the motion to compel, the motion to dismiss, or the motion for a protective order was unwarranted because of his health issues, because he had not acted willfully or in bad faith, and because defense counsel had failed to meaningfully confer before filing them, having only emailed despite that email is not the optimal means of communication. Defense counsel responded the parties' usual means of communication had been email and observed they had sent many before moving to compel. He opined a phone call would have been unfruitful considering the failure by Cake's counsel to respond to the motion to compel and failure to respond to the Court's order compelling responses. He could not recall communications about scheduling LeGrand's and Long's depositions but observed Cake had not provided responses by the time she noticed the depositions. He acknowledged defense counsel had not been "without sin"

regarding mediation scheduling but rhetorically asked why the defendants would participate in mediation after months of "radio silence" and with a motion to dismiss pending.

Regarding previous settlement efforts, both sides agreed they had been too far apart to settle at the beginning. Cake had demanded more than $20,000 plus attorney's fees, and the defendants had believed her claims lacked merit. Cake's counsel expressed his belief that settlement would be more likely now.

A surprise to the Court, defense counsel presented a "writ of bodily attachment" he had received the day before in connection with the divorce proceedings of Cake's counsel. The writ, signed June 19, 2017, called for the arrest of Cake's counsel upon entering Florida based on failure to pay child support. Defense counsel contended that, based on the writ and the actions (or inactions) of Cake's counsel, Cake's counsel should be disqualified from representing Cake and pay expenses in bringing the motion to compel, motion to dismiss, and motion for a protective order and preparing for the hearing. Cake's counsel stated he had been made aware of the writ recently, believed it would be withdrawn quickly, and opined it should not have been issued in the first place.

I gave Cake's counsel an opportunity to respond in writing to defense counsel's new argument after time to reflect on it and to file under seal any supplemental information concerning his health issues, setting a July 28 deadline. I explained Cake's counsel was not required to file anything but it could bolster his position, adding I was unsure the Court had enough to rule in his favor on all issues on the record as it stood. He indicated he would file something. Defense counsel stated he was hesitant to commit to not disclosing the sealed supplemental information to counsel for the wife of Cake's counsel in the divorce proceedings in light of its potential relevance there and inconsistencies between statements by Cake's counsel in this case and what defense counsel had learned from counsel for the wife. I ordered

defense counsel to keep any sealed response confidential and informed him he could move to disclose it if he believed disclosure necessary.

Cake's counsel asked the Court to again refer the case to mediation and allow a 30- to 60-day period for discovery. Defense counsel conceded dismissal was unwarranted because there is no evidence of Cake's involvement in the complained-of conduct and her counsel's conduct does not warrant such an extreme sanction but urged the Court to order Cake's counsel to pay the defendants' expenses in moving to compel, moving to dismiss, moving for a protective order, and preparing for the hearing; order Cake's counsel to withdraw from the case; and, after allowing Cake time to obtain new counsel, enter an amended case management and scheduling order allowing a period of expedited discovery.

Defense counsel acknowledged the defendants had not filed documentation of expenses in moving for a protective order, moving to dismiss, or preparing for the hearing but indicated they could do so quickly, estimating counsel had spent about two hours on the motions and about four hours preparing for the hearing. I permitted the defendants to provide evidence of those expenses after conferring with Cake's counsel about the amount.

Since the hearing, neither side has filed anything.

## II. Law

### A. *Federal Rule of Civil Procedure 1, Local Rule 3.01(g), and the Middle District Discovery Handbook*

Federal Rule of Civil Procedure 1 provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The addition of "and the parties" places shared "responsibility to employ the rules in the same way." Fed. R. Civ. P. 1, Advisory Comm. Notes (2015 Amend.). "Effective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure." *Id.*

Local Rule 3.01(g) provides:

Before filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion. A certification to the effect that opposing counsel was unavailable for a conference before filing a motion is insufficient to satisfy the parties' obligation to confer. The moving party retains the duty to contact opposing counsel expeditiously after filing and to supplement the motion promptly with a statement certifying whether or to what extent the parties have resolved the issue(s) presented in the motion. If the interested parties agree to all or part of the relief sought in any motion, the caption of the motion shall include the word "unopposed," "agreed," or "stipulated" or otherwise succinctly inform the reader that, as to all or part of the requested relief, no opposition exists.

The Middle District Discovery Handbook supplements the Federal Rules of Civil Procedure and Local Rules by capturing discovery custom and practice in this district. Handbook at 2. It "is neither substantive law nor inflexible rule; it is an expression of generally acceptable discovery practice in the Middle District. … Judges and attorneys practicing in the Middle District should regard the handbook as highly persuasive in addressing discovery issues." *Id.*

The Handbook explains, "The term 'confer' in [Local] Rule 3.01(g) means a substantive discussion. Counsel must respond promptly to inquiries and communication from opposing counsel. Many potential discovery disputes are resolved (or the differences narrowed or clarified) when counsel confer in good faith. Rule 3.01(g) is strictly enforced." *Id.* § I.A.2.

The Handbook explains, "Discovery … should be practiced with a spirit of cooperation and civility." *Id.* § I.A.1. In that regard,

An attorney shall reasonably attempt to accommodate the schedules of opposing counsel, parties, and witnesses in scheduling discovery.

…

A party responding to a discovery request should make [a] diligent effort to provide a response that (i) fairly meets and complies with the discovery request and (ii) imposes no unnecessary burden or expense on the requesting party.

…

An attorney is expected to accommodate the schedules of opposing counsel. In doing so, the attorney should normally pre-arrange a deposition with opposing counsel before serving the notice. If this is not possible, counsel may unilaterally notice the deposition while at the same time indicating a willingness to be reasonable about any necessary rescheduling. … Local Rule 3.02 requires the party noticing the deposition to give a minimum of fourteen days' written notice to every other party and the deponent, absent agreement or an order based upon some exigent circumstance. And giving substantially more than fourteen days[*] notice is strongly encouraged."

*Id.* §§ I.A.3, I.C.4, II.A.1.

The Handbook emphasizes, "The Federal Rules of Civil Procedure set forth explicit time limits for responding to discovery requests. If unable to answer timely, an attorney should first seek an informal extension of time from counsel propounding the discovery. Counsel in this district typically accommodate reasonable requests for additional time. If unable to informally resolve the matter, counsel should move for an extension of time to respond." *Id.* § I.E.1. The Handbook adds, "Motions for extension of time within which to respond to discovery should be filed sparingly and only when counsel are unable to informally resolve their disputes. Counsel should be aware that the mere filing of a motion for an extension of time in which to respond does not, absent an order of the Court, extend the deadline for responding to discovery requests." *Id.* § I.E.2. The Handbook cautions a party's "unexcused failure to comply with [an order compelling discovery] is treated by the Court with special gravity and disfavor." *Id.* § I.E.3.

## B.     *Federal Rule of Civil Procedure 37*

If a court grants a motion to compel discovery or for a protective order, "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); *see also* Fed. R. Civ. P. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses" in connection with a motion for a protective order). "But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). Nondisclosure is substantially justified if reasonable people could differ on its appropriateness. *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997).

If a party "fails to obey an order to provide or permit discovery, … the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). A court may enter an order: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). "Instead of or in addition to [those measures], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

To decide if attorney's fees to address a discovery violation are reasonable, courts have applied the lodestar approach in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). *See, e.g.*, *Developers Surety & Indem. Co. v. Bi-Tech Constr., Inc.*, No. 13-22767-CIV-DIMITROULEAS/Snow, 2014 WL 11880995, at *1 (S.D. Fla. Feb. 12, 2014) (unpublished); *Martin v. Am. Traveler Staffing Prof'ls, LLC*, No. 08-80461-Civ, 2008 WL 7863654, at *6 (S.D. Fla. Sept. 9, 2008) (unpublished). Under that approach, a court's "starting point" is a calculation of the lodestar figure, which is "the number of hours reasonably expended … multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. To arrive at a reasonable amount, the court then considers other factors that require an adjustment of the lodestar figure. *Id.* at 433–37.

"[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." *Norman*, 836 F.2d at 1301.

A "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. The relevant legal community is where the case is filed. *A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

## C.    *Disqualification of Counsel*

"[L]awyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) (internal quotation marks omitted). A court has the "power and responsibility to regulate the conduct of attorneys who practice before it." *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir. 1979).

"A motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict or breach of ethical duties to the attention of the court."

*Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980). A party may also or instead pursue bar disciplinary proceedings or sue for malpractice. *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005).

A disqualification motion in federal court is governed by local rules and federal common law. *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). The movant must prove the grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). If a court bases disqualification on an ethical violation, "the court may not simply rely on a general inherent power to admit and suspend lawyers, without any limit on such power." *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). Instead, the court must identify a rule and find a violation of the rule. *Id.*

Because a litigant is presumptively entitled to counsel of his or her choosing, only a compelling reason will justify disqualification. *BellSouth*, 334 F.3d at 961. Because disqualification is a "harsh sanction, often working substantial hardship on the client," it should be used "sparingly." *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). And because a disqualification motion may be used to harass or for tactical advantage, it should be viewed with caution. *Herrmann*, 199 F. App'x at 752.

Disqualification is not mandatory, even if a court finds a lawyer has violated an ethical rule. *Prudential*, 365 F. Supp. 2d at 1236. Instead, a "court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

In undertaking the balancing, pertinent factors may include the nature of the ethical violation, the age of the case, the prejudice to the parties, the effectiveness of counsel in light of the violation, the public's perception of the profession, and whether the attempt to disqualify is a tactical device or a means of harassment. *See Cox v.*

*Am. Cast Iron Pipe Co.*, 847 F.2d 725, 731–32 (11th Cir. 1988) (considering some of those factors); *Arrowpac Inc. v. Sea Star Line, LLC*, No. 3:12-CV-1180-J-32JBT, 2013 WL 5460027, at *12 (M.D. Fla. Apr. 30, 2013) (unpublished) (same); *Prudential* 365 F. Supp. 2d at 1237 (same).

This Court's Local Rules provide that The Rules Regulating The Florida Bar govern members of this Court. Local Rule 2.04(d).

Rule 4-1.1 provides, "A lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

Rule 4-1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Similarly, Rule 4-3.2 provides, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." The comment to the rule states, "Dilatory practices bring the administration of justice into disrepute." *Id.*

Rule 4-3.3 provides, "A lawyer shall not knowingly … (1) make a false statement of fact … to a tribunal or fail to correct a false statement of material fact … previously made to the tribunal by the lawyer." The comment to the rule states, "[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry." *Id.*

## III.    Analysis

### A.    *Dismissal*

Although the defendants originally asked the Court to dismiss the amended complaint based on Cake's failure to respond to the interrogatories and requests for production and otherwise prosecute the case, Doc. 22 at 5–6, they since have

effectively withdrawn that request through the concession at the July 7 hearing that dismissal is unwarranted because there is no evidence of Cake's involvement in the complained-of conduct and her counsel's conduct does not warrant that extreme sanction. There is no apparent reason to not accept that concession.

## B.    *Expenses*

### 1.    *Motion to Compel*

Requiring Cake's counsel to pay expenses in bringing the motion to compel is warranted. His statements concerning health issues, corroborated by his nurse practitioner's statements, are credible. Nevertheless, they do not excuse his failure to request an extension at least during the period when defense counsel repeatedly asked him when they could expect to receive the responses. Reluctance to reveal health issues does not overcome a lawyer's obligation to diligently prosecute a case, and Cake's counsel presents no good reason why the defendants should bear the expense of his own reluctance. While conferring by telephone would have been preferable, the telephone line goes both ways, and the plaintiff's counsel shares responsibility for not using that means of communication to work with opposing counsel to discuss an acceptable path forward. Having done nothing instead was not substantially justified, and the circumstances do not make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)−(iii).

Considering the information about defense counsel, *see* Docs. 26-1, 26-2, and my own knowledge of the local market, the rates charged by them ($378 an hour for Margulies; $207 an hour for Walsh) are the prevailing market rates for similar services by lawyers of reasonably comparable skills, experience, and reputation in Jacksonville and are reasonable, *see* Norman, 836 F.2d at 1299. Considering the billing records showing no work that was duplicative, clerical, inflated, or otherwise unnecessary, *see* Doc. 26-3 at 3, the time they spent to prepare the motion to compel (0.6 hours by Margulies; 3 hours by Walsh) is reasonable. Using those figures, the

lodestar is $847.80. No factor warranting increasing or decreasing that amount is alleged or apparent.

2.    *Motion to Dismiss*

Requiring Cake's counsel to pay expenses in bringing the motion to dismiss is unwarranted. The defendants filed the motion the business day after Cake's responses to the interrogatories and requests for production were due and since have conceded the primary relief requested (dismissal) is unwarranted because there is no evidence of Cake's involvement in the complained-of conduct and her counsel's conduct does not warrant that extreme sanction.

3.    *Motion for Protective Order*

Requiring Cake's counsel to pay expenses in bringing the motion for a protective order is unwarranted. The motion for a protective order itself was justified for the reasons explained in the order granting it (Cake's counsel unilaterally scheduled the depositions; Cake's counsel did not provide the advance notice required by Federal Rule of Civil Procedure 30(b)(1) and Local Rule 3.02; and LeGrand and Long were unavailable). Nevertheless, requiring Cake's counsel to pay expenses in bringing the motion for a protective order would be unjust considering defense counsel's failure to provide deposition dates in the fall of 2016 despite repeated requests for them and a promise to do so, *see* Doc. 32-1 at 7 ("We have reached out to Mr. Long and Mr. LeGrand asking for their availability and will let you know as soon as we hear back from them."), and the absence of an attempt to confer beyond a single ultimatum in an email, *see* Doc. 24-2 at 2 ("If these notices are not canceled by noon on Monday, we will file a motion for protective order and bring these issues to the Court's attention."). To the extent the failure to provide deposition dates in the fall of

2016 was due to Cake's failure to provide responses to interrogatories and requests for production, this Court does not condone a "tit for tat" approach to discovery.[2]

### 4.   *Preparation for the Hearing*

Requiring Cake's counsel to pay expenses in preparing for the July 7 hearing is unwarranted. Neither side has proceeded in the manner Rule 1 and the Handbook envision, evidenced by the emails about the responses to the interrogatories and requests for production, the emails about setting depositions for LeGrand and Long, and the emails about scheduling the mediation. A hearing on expenses for the motion to compel alone would have been unnecessary given the Court's expressed intent to grant it, a hearing on the other motions would have been unnecessary if a mediation had been scheduled and successful, and the reasons for not requiring Cake's counsel to pay expenses in bringing the motions to dismiss and for a protective order should

---

[2] *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) ("[I]t is well-established that a party cannot unilaterally refuse to fulfill its discovery obligations as retaliation for another party's discovery violations."); *Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ. 2068, 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014) (unpublished) ("Discovery is not equity: one party's noncompliance with discovery requirements does not excuse the other's failure to comply. Each party's obligation is independent."); *Lindell v. Synthes USA*, No. 1:11-cv-02053, 2013 WL 3146806, at *4 (E.D. Cal. June 18, 2013) (unpublished) ("'Discovery is not conducted on a 'tit-for-tat' basis.'") (quoting *Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Points Events, LP*, 256 F.R.D. 678 (C.D. Cal. 2009)); *Grateful Dead Prods. v. Sagan*, No. C 06-7727, 2007 WL 2155693, at *1 n.3 (N.D. Cal. July 26, 2007) (unpublished) ("[T]hat one party has not responded to discovery does not entitle an opposing party to refuse to provide discovery. Plaintiffs['] remedy for any failure of Defendants to provide discovery was a motion to compel, not an improper attempt to delay Defendants' discovery efforts."); *Lumbermens Mut. Cas. Ins. Co. v. Maffei*, No. 3:03-cv-262, 2006 WL 2709835, at *5 n.21 (D. Alaska Sept. 20, 2006) (unpublished) ("The court does not consider 'tit-for-tat' objections to discovery to be legitimate objections. If the opposing party is recalcitrant in responding to discovery requests, the rules provide a mechanism for compelling responses and/or imposing sanctions. The rules do not authorize one party to withhold discoverable material in retaliation for the opposing party's withholding of discoverable material.").

be the same reasons for not requiring Cake's counsel to pay expenses in preparing for a hearing on them.

## C.    *Disqualification*

Recognizing Cake's entitlement to counsel of her own choosing and the circumstances, requiring her counsel to withdraw is unwarranted. To support the oral request to require Cake's counsel to withdraw, defense counsel points to (1) the writ of bodily attachment that would permit arrest of Cake's counsel if he entered Florida and therefore inhibit his ability to prosecute the case; (2) asserted bad-faith representations by Cake's counsel about his inability to prosecute the case; and (3) the apparent inability of Cake's counsel to comply with obligations in the case. Implicated are the ethical rules requiring counsel to provide competent representation, act with diligence, and maintain candor with the Court. *See* Rules 4-1.1, 4-1.3, 4-3.2, and 4-3.3 of The Rules Regulating The Florida Bar.

Cake's counsel attended the July 7 hearing by telephone after issuance of the writ of bodily attachment. If it prevents him from attending any in-person proceeding in this case or affects his bar license, he will have to request permission or be forced to withdraw. For now, it has not, and it is unclear whether it remains or will remain in effect.

The representations by Cake's counsel do not appear to have been made in bad faith. It is undisputed he actively prosecuted the case in the beginning, *see, e.g.,* Docs. 1, 2, 3, 8, 9, 10, 16, 17, has health issues of an intermittent character that his primary care provider opined rendered him unable to work in early February when the Court had ordered him to act, *see* Doc. 28-1, and has been involved in what appear to be contentious and lengthy divorce proceedings, *see* Doc. 29-6. That this case unraveled because of health and perhaps other personal issues is not inconsistent with an ability to participate in a relatively small way in a handful or so of other cases over a six-month period.

The health issues are in the open now, the primary care provider for Cake's counsel is hopeful a medication change will enable him to resume normal work, he believes he can resume normal work, he appeared to take his failures seriously at the July 7 hearing, there is no record in this Court of previous disciplinary measures against him,[3] and he has taken actions that indicate he can resume prosecution of this case (he ultimately responded to the interrogatories and requests for production, he responded to the Court's February 8 and 14 orders, he made many attempts to schedule a mediation, and he attended the July 7 hearing). Although he provided no supplemental information concerning his health issues or the writ of bodily attachment as he had indicated he would, he was not required to.

Although requiring Cake's counsel to withdraw is unwarranted at this time, a warning to him is warranted; specifically, any unexcused delay in responding to emails, providing discovery, or complying with deadlines may result in an order requiring him to withdraw.

### D.    Case Management

To get the case back on track, and considering the parties' agreement that a brief discovery period is necessary, entry of an amended case management and scheduling order with these recommended provisions is warranted:

---

[3]In *Cohen v. Nat'l Ass'n of Specialty Pharm. Inc.*, No. 8:15-cv-475-T-33AEP (M.D. Fla.), the defendant moved for an order directing Cake's counsel to show cause why he should not be disqualified from serving as counsel for any party adverse to it based on an alleged prior attorney-client relationship between him and the defendant. *See* Doc. 26 in *Cohen*. He vehemently denied the allegation, asserting, "I have never, in any capacity, represented [the defendant.] … To be even more clear, no law firm that I have ever been associated with has ever represented [the defendant] or provided it with legal services." Doc. 38 in *Cohen*. The defendant later withdrew the motion in light of the parties' settlement. Doc. 49 in *Cohen*. The alleged ethical violation in that case was never established and is unrelated to the conduct of Cake's counsel in this case.

- Cake must file a certificate of interested persons and corporate disclosure statement within 7 days of the entry of the order.

- Discovery must be completed within 60 days of the entry of the order, and counsel must diligently respond to discovery requests and requests for dates for depositions.

- Mediation with Wirtz must be completed within 75 days of the entry of the order.

- Dispositive and *Daubert* motions must be filed within 90 days of the entry of the order.

- Corresponding provisions for filing a joint final pretrial statement, conducting a final pretrial conference, and placing the case on a new trial term.

## IV.  Recommendations[4]

I recommend:

1. **granting** the defendants' request for an award of expenses in bringing the motion to compel, Doc. 20, and requiring Cake's counsel to pay them **$847.80** in attorney's fees within 60 days of the order on this report and recommendation;

2. **denying** the defendants' request for an award of expenses in bringing the motion for a protective order, Doc. 24;

---

[4]This report and recommendation addresses dispositive issues (the motion to dismiss) and nondispositive issues (case management and discovery sanctions). "A party may serve and file objections to [an order or report and recommendation on a nondispositive matter] within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(a), (b)(3); 28 U.S.C. § 636(b)(1)(A), (B); 11th Cir. R. 3-1; Local Rule 6.02.

3. **deeming withdrawn** the motion to dismiss, Doc. 22, to the extent it seeks dismissal of the amended complaint;

4. **denying** the motion to dismiss, Doc. 22, to the extent it seeks an award of expenses in bringing the motion or any other relief;

5. **denying** the defendants' oral request for an award of expenses in preparing for the July 7, 2017, hearing;

6. **denying** the defendants' oral request to require Cake's counsel to withdraw;

7. **issuing** a warning to counsel that any unexcused delay in responding to emails, providing discovery, or complying with deadlines may result in an order requiring him to withdraw;

8. **directing** counsel on both sides to expeditiously provide dates when requested; and

9. **entering** an amended case management and scheduling order providing that Cake must file a certificate of interested persons and corporate disclosure statement within 7 days of the entry of the order; discovery must be completed within 60 days of the entry of the order; mediation with Gregg Wirtz must be completed within 75 days of the entry of the order; dispositive motions must be filed within 90 days of the entry of the order; providing corresponding dates for filing a joint pretrial statement and conducting a final pretrial conference; and placing the case on a new trial term.

**Entered** in Jacksonville, Florida, on August 16, 2017.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:     Counsel of Record